UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
2211 United States Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303-3361

| | |
|---|---|
| CHARLES W. GOODE, Plaintiff <br> On behalf of himself and all non-exempt <br> Employees of Wild Wing Café both past & <br> present who consent to representation <br><br>    Attorney for Plaintiff <br>       Goode Law LLC <br>       Katrenia C. Goode, Esq. <br>       555 North Point Center East <br>       Suite 400 <br>       Alpharetta GA  30022 <br>       (770) 755-1762 <br>    V. <br><br> WILD WING CAFÉ, a d/b/a of Tapps Two <br>          LLC <br>    Defendant(s) <br><br><br>    Attorney(s) for Defendant(s) <br>       Downey & Cleveland, LLP <br>       G. Lee Welborn, Esq. <br>       288 Washington Street <br>       Marietta, GA   30060 <br>       (770) 422-3233 <br><br>    Agent for Service – Tapps Two LLC <br>       Gregory L. Dockery <br>       and Individually <br>       16615 Westbrook Rd <br>       Alpharetta, GA 30004 | EEOC NO.  : 410-2010-03943 <br><br> CASE NO : <br><br><br><br><br> **CIVIL ACTION** <br><br> PLAINTIFF'S  COMPLAINT <br><br> OF RACIAL DISCRIMINATION  IN VIOLATION OF TITLE VII; VIOLATION OF 42 U.S.C. 1981; FAIR LABOR STANDARDS ACT VIOLATION; AND VIOLATION OF O.C.G.A. §34-7-2 |

## VENUE

Venue is proper in the Northern District of Georgia under (42 U.S.C. § 2000e *et seq.*); under 42 U.S.C. § 1981; under the Fair Labor Standards Act, 29 U.S.C. et. Seq. and under 29 U.S.C. § 216(b), because the acts complained of occurred within Alpharetta, Georgia, in Fulton County and in the jurisdiction of this Court and because Defendant(s) are subject to personal jurisdiction in this District.

## JURISDICTION

Plaintiffs invokes the jurisdiction of the District court under the "federal question" statute, 28 U.S.C. Sec. 1331, pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e *et seq.*), 42 U.S.C. § 2000e-5; pursuant to 42 U.S.C. § 1981 and pursuant to The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et. Seq. and under 29 U.S.C. § 216(b). The FLSA permits employees to sue on behalf of themselves and of other similarly situated employees, who may become Party Plaintiffs by issuing their written consent. 29 U.S.C. § 216(b). Pursuant to 28 U.S.C. 1367, Plaintiff' invokes the courts supplemental jurisdiction of the related state law claim for non-payment of wages under O.C.G.A. § 34-7-2 .

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues which may be tried by a jury.

## PARTIES

Plaintiff Charles Goode ("Plaintiff") resides in Alpharetta, Georgia (within this District) and is a citizen of the United States. Plaintiff was employed by Defendant Wild Wing Café ("Defendant") a business located in Alpharetta, Georgia from on or about October 2009 to on or about June 2010 as a non-exempt employee. At all times material to this action, Plaintiff and other non-exempt employees of Defendant(s) were intentionally and routinely denied payment for any over-time hours work.

## I. PLAINTIFF'S DISCRIMINATION CLAIM

This is a civil rights employment discrimination case filed pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*) (hereinafter "Title VII") and 42 U.S.C. § 1981 by Charles W. Goode (hereinafter "the Plaintiff'), who was employed as a dishwasher and prep cook at Wild Wing Café in Alpharetta, Georgia, Fulton County, against Defendants Wild Wing Café a d/b/a of Tapps Two LLC and Tapps Two LLC, its owners, assigns, successors in interest (hereafter collectively referred to as "Defendants"). Defendant is a restaurant with annual revenues exceeding $500,000.00.

,

### Summary of the Case

In this First Amended Complaint, the Plaintiff, a member of a protected class, alleges that the Defendants violated his civil rights by (1) wrongfully terminating him in violation of Title VII (i.e., by treating him less favorably then similarly situated whites; and/or that Defendants engaged in a discriminatory practice or

practices with malice or reckless indifference to Plaintiff's federally protected rights under 42 U.S.C. § 1981(a)(b)(1).

## Statement of the Law

<u>Title VII of the Civil Rights Act of 1964</u> protects individuals against Employment Discrimination on the basis of race and color as well as national origin, sex, or religion. It is unlawful to discriminate against any employee because of race or color in regard to hiring, **termination**, promotion, compensation, job training, or any other term, condition, or privilege of employment. Title VII prohibits both intentional discrimination and neutral job policies that disproportionately exclude minorities and that are not job related. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Wild Wing Café engaged in disparate treatment on the basis of his race. He affirms that he received a right to sue notice from the EEOC and timely filed this action within ninety (90) days thereafter.

The statute of limitations for filing a 42 U.S.C. § 1981, wrongful termination claim is 4 years. Plaintiff affirms that he has timely filed this action under 42 U.S.C. § 1981 (a) which states in pertinent part "All persons within the jurisidiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other." Punitive damages are recoverable where the employer engaged in intentional discrimination and has done so either with malice or with reckless indifference to the federally protected rights of the Plaintiff." Kolstad v. American Dental Association, 119 Sup. Ct. 2118 (1999).

## Complaint

**Wild Wing Café fired Plaintiff an African American non-exempt employee with a previously unblemished work record for an alleged "No call-No show" at work. Wild Wing Cafes written policy mandates termination for all "No**

**Call No show" infractions.  Wild Wing Cafe did not fire A.J. Siska  - a white male (kitchen manager) or Dylan Frasek – a white male (non-exempt employee)  for their actual "No call-No shows"; nor did Wild Wing Cafe fire a white female Jennifer Gerster (non-exempt employee) for her actual "No call-No show".**

1.     The Plaintiff, Charles Goode, is an African American male and as such is a member of a protected class. Plaintiff was employed by Wild Wing Café in Alpharetta, Georgia from on or  about October 25, 2009 to on or about June  2010.  The Plaintiff , Charles Goode alleges that Wild Wing Café illegally engages in disparate treatment of people on the basis of race.   Plaintiff, Charles Goode further alleges that he was wrongfully terminated in violation of Title VII and that the reason given for his termination was a pretext in violation of  42 U.S.C. § 1981.

2.     The Plaintiff, Charles Goode, a non-exempt employee was qualified for his position as a dishwasher and for nearly eight months had performed his job satisfactorily.  Plaintiff, Charles Goode had a good work ethic and always reported to duty when assigned. Moreover, Plaintiff always reported on time.  Plaintiff never missed a single day of work.  In fact until the day he was wrongfully terminated, Plaintiff had an unblemished work record.  Also, until just two weeks before his termination, Plaintiff had always enjoyed cordial interaction with kitchen managers Anthony Siska and Kelly Lindberg, and Manager, Greg Dockery.

3. In May 2010, a couple of weeks before his termination, Plaintiff asked a white female co-worker named Liz for a date. Liz then asked Plaintiff about his racial background specifically asking if Plaintiff was part African-American. Plaintiff confirmed this was the case. Liz then said that she would need to think about Plaintiffs request first, as she had inadvertently dated an African-American male for a couple of years before discovery of his identity and had some misgivings about another inter-racial involvement.

4. A day or so later an Asian Co-worker named Stephanie approached Plaintiff at work and told him that there had been some discussion among the employees as to Plaintiff's true racial identity. Plaintiff has a fair complexion, is freckled with hazel

eyes and has an ash-blond mustache. Plaintiff again confirmed that he did in fact have some African American ancestry.

5. The next day or shortly thereafter Plaintiff (a dishwasher) arrived at work to find the kitchen in complete disarray, with dishes piled high on every surface including the floor, in direct violation of both the restaurant policy and the County health code. As required, Plaintiff immediately notified his supervisor the kitchen manager Kelly Lindberg of the violations and the state in which he had found the kitchen. Prior to this time Plaintiff had a friendly relationship with his supervisor Kelly Lindberg.  This day however, Plaintiff was stunned when Kelly Lindberg reacted by immediately launching into an emotionally charged, profane, irrational unprovoked tirade  heavily laced with filthy language and  anger, whose  illogical rhetoric seemed  aimed squarely and solely at Plaintiff. **During this vitriolic monologue  Kelly Lindberg repeatedly threatened to fire Plaintiff over and over for some never articulated offense.**  Her tirade lasted for approximately several minutes throughout which time Plaintiff miraculously remained silent and began tackling the mess in the kitchen area.  **[Thereafter, and for the remainder of his employment  Kelly Lindberg never again spoke to Plaintiff until the day a couple of weeks later when she gleefully confirmed his firing in a phone call when Plaintiff called to request reconsideration of his termination.]**

6. Plaintiff continued to report to work timely, but noticed a new unexplained permanent chill in relations  with kitchen managers AJ Siska and  Kelly Lindberg and also with Manager Greg Dockery who for the remaining days of his employment now barely acknowledged Plaintiff's existence and no longer engaged in the exchange of any pleasantries.

7. ON or about May 28th, 2010 Plaintiff reported to work at 5 p.m. per the posted schedule he had viewed at the end of his last shift. On his timely arrival, Mgr. AJ Siska, informed Plaintiff that the posted schedule now reflected that Plaintiff was to have been at work earlier that afternoon and that in spite of the fact that Plaintiff had reported to work (albeit late per then posted schedule) Plaintiff's alleged tardiness was going to be treated as a "No call, No show".  Plaintiff was immediately fired.

Plaintiff protested because the shift had been changed after it had been posted, yet he had not been told of the shift change. AJ Siska the kitchen manager then informed Plaintiff that he, Kelly and Doc (Greg Dockery) had already discussed the issue and decided that Plaintiff was a "No call, No show" and would be immediately terminated once he arrived.

8. The employee manual states that **all** no call no shows are to be terminated. No exceptions to that policy were listed. Kitchen Manager A.J. Siska told Plaintiff that every no call no show was automatically fired. This however was not true.

It was common knowledge that Kitchen Manager, AJ Siska ( a white male) had two such "No call No shows" in his record. Siska has twice previously failed to show up for work because both times he had been arrested and was in jail at the time of his shift. Wild Wings first demoted, then transferred Siska. **However, Wild Wing Café did not fire Siska – a white male**.

Plaintiff believes that Defendants gave a pretextual reason for his firing. A "No-call No show" is a person who never reports to work. Plaintiff actually reported to work, albeit late because of the unknown change to the schedule. In any case, Plaintiff reported to work and thus was not a "No show" as alleged.

Even if Plaintiff had actually been a "No call No Show" he was treated far more harshly than his white male counterpart - Dylan Fracek. Dylan Fracek was a non-exempt employee , like the Plaintiff. In April 2010, Dylan Fracek failed to show up for work and did not call, (i.e. Dylan had a "No Call, No Show"). This occurred just one month before Plaintiff was terminated for an alleged "No call No show". *Was Dylan fired when he completely failed to show for his shift at all and never called?* No, he was not. Instead Wild Wing Café did not enforce it's so called mandatory firing policy and *Dylan, was only given a warning* and agreed to do extra cleaning at the restaurant as punishment. **Wild Wing Café did not fire Dylan Fracek – a white male**.

Earlier in the year 2010, Jennifer Gerster, a white female, also (like Plaintiff) a non-exempt employee, failed to show for her shift at all and she did not call, (i.e.

Jennifer had a "No Call, No Show"). *Was Jennifer fired when she completely failed to show for her shift at all and never called?* No, she was not. Instead Wild Wing Café did not enforce it's so called mandatory firing policy and *Jennifer, was only given a warning.* **However, Wild Wing Café did not fire Jennifer Gerster – a white female**.

On numerous other occasions other similarly situated Whites who failed to report on time were simply given a phone call by management and invited to come in late.   By comparison Plaintiff was treated much more harshly than the white employees at Wild Wing Café who actually did violate the rules.

9.   Plaintiff timely filed an EEOC complaint for violation of Title VII because of the disparate treatment he received as an African American male in comparison to his white counterparts at Wild Wing Café.

10.   Thereafter, in retaliation and as further evidence of disparate treatment , Wild Wings manager's AJ Siska and Greg Dockery wrongly opposed Plaintiff's unemployment claim and as a result Plaintiff did not receive unemployment benefits.  While another white male employee Mike McDaniel who voluntarily quit and should have been ineligible for benefits nonetheless received his unemployment benefits.

RELIEF REQUESTED

Discrimination Claim

Wherefore Plaintiff respectfully requests the Court find that Defendants did in fact wrongfully terminate Plaintiff in violation of Title VII and 42 U.S.C. § 1981 and order Defendant to compensate Plaintiff for back pay, inclusive of benefits, compensatory and punitive damages and costs.  Defendant further requests that the

Court grant Defendant Attorney's fees and all such other relief as Plaintiff may be due both in law and equity.

# PLAINTIFF'S FAIR LABOR STANDARDS ACT CLAIM

## Summary of the Case

Defendant is a Restaurant, Plaintiff was employed as a non-exempt hourly employee at Defendant's restaurant.  Defendant regularly alters, redacts and under reports hours worked by its non-exempt hourly employees to avoid payment of regular and over-time. Plaintiff brings an action for violation of FLSA for non-payment of wages and overtime on behalf of himself and all other plaintiffs known or unknown; and for violation of O.C.G.A. § 34-7-2 for non-payment of  the full net amount of wages or earnings due.

## Statement of the Law

### FLSA

Under the Fair Labor Standards Act, 29 U.S.C. § 201 et. Seq. an employee may sue for unpaid overtime.   The FLSA is a remedial statute that "has been construed liberally to apply to the furthest reaches consistent with congressional direction." Johnston v. Spacefone Corp.,  706 F.2d 1178, 1182 (11th Cir. 1983) (quoting Mitchell v. Lublin, McGaughy & Assoc.,  358 U.S. 207, 211, 79 S.Ct. 260, 264 (1959)). It requires employers to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1).   Normally FLSA actions have a two-year statute of limitations, but where the violation of the act has been willful, the statute of limitations is extended to three years.  Where the employee can show a willful violation of the FLSA, the employee can also recover liquidated  damages, that is a doubling of the overtime.

Any employee who is fired, demoted or not promoted for complaining about overtime violations or for filing a claim for overtime benefits can recover back pay, liquidated damages and attorney's fees.

An FLSA claim may be brought as a collective action under 29 U.S.C. §216(b). An FLSA action for overtime pay can be maintained by "one or more employees for and in behalf of himself or themselves and other employees similarly situated."

**29 U.S.C. § 216 (b).**  However, prospective plaintiffs under FLSA must expressly consent to join ("Opt in to") the class, because §216 (b) contains this provision: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.

For an opt-in class to be created [P]laintiffs need show only 'that their positions are similar, not identical,' to the positions held by the putative class members." Sperling v. Hoffman-LaRoche, 118 F.R.D. 392, 407

### Motion for Conditional Class Certification

Plaintiff hereby motions the Court for Conditional Class Certification and Court-Authorized Notice Pursuant to FLSA, 29 U.S.C. § 216(b)

Plaintiff, on behalf of himself individually and all other similarly situated employees, bring a Motion for Conditional Class Certification and Court-Authorized Notice pursuant to FLSA, 29 U.S.C. § 216(b). As a necessary component of this Application, Plaintiff also seeks discovery of the names of former and current employees who may be similarly situated.

### Plaintiff's Motion

The basis for Plaintiffs' Motion is that  (a) Plaintiff and potential opt-in Plaintiff's complain of Wild Wing Café company policy of not paying employees who are present and working hourly wages for all of the time that they were actually present and working;  (b) are all hourly non-exempt employees who clock into to work or should be allowed to clock in to work); (c) are employees who have had work time worked reduced by Defendant (manually adjusted) to a different start time than when Plaintiff and the potential opt-in plaintiffs actually clocked in/showed up for work and commenced performing tasks for the Defendant employer; and (d) who  were paid less than time actually present and working; and/or (e) who were not paid overtime for hours worked in excess of forty (40) hours in a work week.

District courts have adopted a two-stage approach to determine whether a cause may be certified under FLSA.  For a collective action under FLSA, Plaintiffs must

"establish: (1) that the named plaintiffs and proposed members of the class are `similarly situated,' and (2) that the proposed class members opt-in (consent in writing) to be bound by the result of the suit." Abrams v. General Elec. Co., 1996 WL 663889, at *1 (N.D.N.Y. Nov. 4, 1996).

## Step One

The first step is the notice stage in which the Court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. See Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y.2007).

("[P]laintiff need only describe the potential class within reasonable limits and provide a factual basis from which the court can determine if similarly situated potential plaintiffs exist."); Mete v. New York State Office of Mental Retardation and Dev. Disabilities, 1993 WL 226434, at *2 (N.D.N.Y. June 24, 1993) (requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"). Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second stage." Levy v. Verizon Info. Servs., Inc., 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007); Roebuck v. Hudson Valley Farms, Inc., 239 F.Supp.2d 234 (N.D.N.Y.2002). The law does not require that named plaintiffs and the putative class members be or have identical claims, Abrams v. Gen. Elec. Co., 1996 WL 663889, at *2 (N.D.N.Y. Nov. 4, 1996)

By Affidavit appended hereto Plaintiff   swears or affirms that Plaintiff and putative class members were victims of Defendant Wild Wing Café's  plan or policy whereby  Plaintiff and potential opt-in Plaintiff's were  not paid hourly wages for all of the time that they were actually present and working for Defendant including over-time wages.

## Step Two

Once the court determines that potential opt-in plaintiffs may be "similarly situated" for the purposes of authorizing notice, the court "conditionally certifies" the collective action, and the plaintiff sends court-approved notice to potential members. Id. Those potential plaintiffs may then elect to opt-in pursuant to section 216(b) by filing Consent Forms with the court. Id. Once notice is accomplished,

the action proceeds as a collective action throughout the discovery process. Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y.2006).

### Plaintiff petitions for Court-Authorized Notice of Collective Action

The United States Supreme Court confirmed that district courts have discretion, within appropriate cases, to implement FLSA § 216(b) and to play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought and to permit discovery of the names and addresses of affected putative members. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171-73, 110 S. Ct, 107 L.Ed.2d. 480 (1989). A court's early intervention in the notice and discovery process is "distinguishable in form and function from the solicitation of claims." Id. at 174, 110 S.Ct. 482

Plaintiff hereby petitions the Court for Court-Authorized Notice of Collective Action Pursuant to FLSA 29 U.S.C. § 216(b). Plaintiff makes this motion because the statute of limitations is not tolled and valid claims, if any, may be either lost or compromised, and because those who may be similarly situated to the Plaintiffs would not know about this case or even their rights to pursue FLSA claims.

As for example an African American male employee, an hourly non-exempt employee named "Kane" whose employment predates that of Plaintiff, but who reportedly physically chased a former kitchen manager named Dan Zeeley (spelling?) through the restaurant in an effort to get him to correct his paycheck to reflect the actual time worked.

As for further example, "Danielle Mason" an hourly non-exempt employee Plaintiff met while employed at Defendant Restaurant, Plaintiff was aware that this particular putative class member named "Danielle Mason" had confronted Defendant and verbally demanded that she be paid for the hours that she had clocked into work. Manager Greg Dockery flatly refused to pay her for her actual time worked. Angered by the great discrepancy in her pay, "Danielle Mason "crumpled and threw her check at Greg Dockery. Danielle Mason quit sometime prior to Plaintiff's wrongful termination.

Because of the potential to have a large pool of employees (due to industry high turnover) Plaintiff seeks to have notice of this collective action distributed nationwide to the putative class members earlier rather than later.

## Plaintiff petitions for Court-Ordered Discovery of Putative Class

When a court approves notice to the putative class, discovery of the names and addresses of putative class members has consistently been granted. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. at 170, 110 S.Ct. 482 (noting that the district court was correct in permitting discovery); United States v. Cook, 795 F.2d 987 (Fed. Cir.1986); Summa v. Hofstra Univ., 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008); Roebuck v. Hudson Valley Farms, Inc., 239 F.Supp.2d at 240. To appraise the scope of discovery, we must first determine who would be eligible to receive this Court's approved notice.

Plaintiff submits that if discovery is required, the relevant period should be three years and not two years. The discovery period, which is the statute of limitations, would be three years if the employer's violation was willful. 29 U.S.C. § 255(a). A willful violation exists when an employer knew or recklessly disregarded that its conduct violated the FLSA. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The Plaintiff alleges that Defendant "failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment. Therefore Defendant's conduct is willful.

In conjunction with providing notice to a putative class, Plaintiff respectfully request the Court consider whether discovery of the names and addresses of similarly situated employees at all Wild Wing Café locations is warranted. Wild Wing Café is a Regional Chain, currently located in the South Eastern United States. Plaintiff seeks the production of a list of all non-exempt employees in the Alpharetta, Georgia store or alternatively throughout the South East region within the last three years, if the Court in its wisdom determines that there may be other non-exempt employees who either have been or may have been subject to the same Corporate culture as the named Defendant who need to have notice of this action so that they can determine if they are affected by a common policy or plan that may curtail their statutory rights to overtime. Plaintiff needs to be provided with their names and addresses so that they can inform them of this action.

## Relief Requested

Plaintiff prays the Court find that potential opt-in plaintiffs are similarly situated to Plaintiff. Plaintiff respectfully moves the Court for Conditional Class Certification; Requests Court-Authorized Notice pursuant to FLSA, 29 U.S.C. § 216(b); and respectfully requests the Court order Discovery of a Putative Class of Plaintiffs.

## O.C.G.A. § 34-7-2

### Statement of law

Every person, firm, or corporation … shall make wage and salary payments to such employees or to their authorized representatives (1) by lawful money of the United States, (2) by check, or (3) with the consent of the employee, by authorization of credit transfer to his account with a bank, trust company or other financial institution authorized by the United States or one of the several states to receive deposits in the United States…. Provided, however, that the dates so selected shall be such that the month will be divided into at least two equal periods; and **provided further that the payments made on each such dated shall in every case correspond to the full net amount of wages or earnings due the employee for the period for which the payment is made.**

**O.C.G.A. § 9-3-22 All actions for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime shall be brought within two years after the right of action has accrued.**

## Statement of the facts

Plaintiff Goode was a dishwasher and prep cook for Defendant Wild Wing Café, employed from on or about October 2009 through on or about June 1st, 2010. Plaintiff was an hourly non-exempt employee who under the FSLA and state law was entitled to wages for hours worked and entitled to one and one-half times his hourly pay for each hour worked above forty hours per week. Plaintiff contends that he and other similarly situated hourly non-exempt employees of Wild Wing Café who perform prep duties performed work for which they were not compensated.

Plaintiff alleges that Defendants intentionally reduced the time reported for Defendant and other hourly employees by manually editing employee time records to reduce or remove both regular time and overtime entries, even though employees have already performed the work.

## Relief requested

Wherefore Plaintiff requests the Court find Defendant's have violated O.C.G.A. § 9-3-22 and grant Plaintiff recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime.

Respectfully submitted this 26th day of April 2011,

_____

Katrenia C. Goode, Esq.

Attorney for Plaintiff- Charles Goode

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF A COLLECTIVE ACTION