IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHARLES W. GOODE | : | CIVIL ACTION NO. |
| | : | 1:11-CV-1337-WSD-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WINGS OF ALPHARETTA, INC., | : | |
| | : | **FINAL REPORT AND** |
| Defendant. | : | <u>**RECOMMENDATION**</u> |

Plaintiff, who is African-America, was terminated as a kitchen staff employee by Defendant, a restaurant operator. Defendant claims that it fired Plaintiff because he did not arrive as scheduled for a shift. Plaintiff claims that he did arrive as scheduled, or at least that there was a misunderstanding as to the schedule, and that his discharge was instead illegally motivated by race.

Plaintiff filed his original Complaint [1] on April 26, 2011, then filed his First Amended Complaint [6] on May 18, 2011. *See* Compl. [1] and Am. Compl. [6]. On November 4, 2011, United States District Judge William S. Duffey, Jr. adopted the Report and Recommendation of Magistrate Judge Christopher Hagy, thereby dismissing all Defendants from this case except for Wings of Alpharetta, Inc., and dismissing all but two of Plaintiff's claims. *See* Nonfinal Report and Recommendation [50] and Opinion and Order [61]. Plaintiff's two remaining claims are for employment

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e17, and for violation of 42 U.S.C. § 1981. *See id.*

Discovery is now complete, and this case is before the undersigned on Defendant Wings of Alpharetta's Motion for Summary Judgment [111]; Plaintiff Charles Goode's Motion for Summary Judgment [135]; Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment [146]; Plaintiff's Motion to Strike the Affidavit of Gregory Dockery [153]; and Plaintiff's Motion for a Court Order [158]. For the reasons stated below, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [111] be **GRANTED** because Plaintiff fails to adduce admissible evidence that he was discharged on account of his race. Plaintiff lacks direct evidence of discrimination. And he fails to adduce circumstantial evidence of discrimination as well because, although he points to a handful of Caucasian employees who were not terminated for missing a shift, he does not establish that those employees or the circumstances surrounding their infractions were similarly situated in all relevant respects. Thus, Plaintiff fails to establish that a genuine issue of material fact exists that a jury could decide in his favor.

The undersigned **RECOMMENDS** that Plaintiff's three Motions for Summary Judgment and/or sanctions [135][153][158] be **DENIED**. The undersigned further recommends that Defendant's Motion to Strike [146] be **GRANTED**.

## I.    FACTUAL ALLEGATIONS

The Complaint alleges that Plaintiff, an African American male, began working as a dishwasher at Wild Wing Café in Alpharetta, Georgia on or about October 25, 2009. *See* Am. Compl. [6] at 6. Plaintiff claims that he was qualified and performed the job satisfactorily. *See id.* at 7. He states that "until just two weeks before his termination [in May 2010], Plaintiff had always enjoyed cordial interaction with kitchen managers Anthony Siska and Kelly Lindberg, and Manager, Greg Dockery." *Id.* at 7.

Plaintiff alleges that, in May 2010, he revealed to a coworker named "Liz" that he was "part African-American." Am. Compl. [6] at 7. Plaintiff claims that another coworker named "Stephanie" subsequently told Plaintiff that unnamed employees had been having "some discussion" about his "true racial identity," to which Plaintiff responded that "he did in fact have some African American ancestry" despite his "fair complexion, . . . freckle[s][,] . . . hazel eyes[,] and . . . ash-blond mustache." *Id.* at 7–8. Plaintiff states that, shortly thereafter, he showed up for work to find "the kitchen in

complete disarray," and that after "immediately notif[ying] his supervisor the kitchen manager Kelly Lindbergh," he "was stunned when Kelly Lindbergh reacted by immediately launching into an emotionally charged, profane, irrational unprovoked tirade." *Id.* at 8. Plaintiff recounts that "Kelly Lindbergh repeatedly threatened to fire Plaintiff over and over for some never articulated offense," and that "for the remainder of his employment Kelly Lindbergh never again spoke to Plaintiff until the day a couple of weeks later when she gleefully confirmed his firing in a phone call." *Id.* at 8.

Plaintiff alleges that, for the final two weeks of his employment, he "noticed a new unexplained permanent chill in relations with kitchen managers AJ Siska and Kelly Lindbergh and also with Manager Greg Dockery who for the remaining days of his employment now barely acknowledged Plaintiff's existence and no longer engaged in the exchange of any pleasantries." Am. Compl. [6] at 8–9.

Plaintiff claims that on or about May 28, 2010, he reported to work at 5:00 pm, which was later than the time he was supposed to arrive according to the most recently posted schedule. *See* Am. Compl. [6] at 9. Plaintiff alleges that, since the last time he had viewed the schedule, his shift had been moved to an earlier time, and that despite this misunderstanding, AJ Siska treated Plaintiff's tardiness as a "No call, No Show."

4

*Id.* at 9. Plaintiff claims that he was "immediately fired" and that he was told by AJ Siska that "[Siska], Kelly and Doc (Greg Dockery) had already discussed the issue and decided that Plaintiff was a 'No call, No show'" subject to immediate termination. *Id.* at 9.

Plaintiff states that he "timely filed an EEOC complaint for violation of Title VII because of the disparate treatment he received as an African American male in comparison to his white counterparts at Wild Wing Café." Am. Compl. [6] at 11. Plaintiff further claims that "in retaliation and as further evidence of disparate treatment, Wild Wings manager's [sic] AJ Siska and Greg Dockery wrongly opposed Plaintiff's unemployment claim and as a result Plaintiff did not receive unemployment benefits." *Id.* at 11. On those grounds, Plaintiff asserts that "Defendants did in fact wrongfully terminate Plaintiff in violation of Title VII and 42 U.S.C. § 1981." *Id.* at 11.[1]

---

[1] This reference to "retaliation" is not set out in the Amended Complaint [6] as a separate claim but rather as a factual allegation in support of Plaintiff's claim of discriminatory discharge.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 (11th Cir. 2009). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 175 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir. 1984). Here, Defendant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party is required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine

issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When considering motions for summary judgment, courts do not make decisions regarding the merits of disputed factual issues. *See Anderson*, 477 U.S. at 249; *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *See Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *See id.*

If a fact is material, the court must also consider the genuineness of the alleged factual dispute. *See id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 242. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587. The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Id.* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259.

### B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### 1. MATERIAL FACTS

Unless otherwise indicated, the Court draws the following facts from the "Statement of Undisputed Material Facts" Defendant filed on July 16, 2012 [111-1] ("SOMF"). The Court has excluded all assertions of fact that are immaterial or presented as legal conclusions, and has excluded assertions of fact unsupported by a citation to evidence in the record or asserted only in the party's brief and not in the Statement of Material Facts [111-1]. *See* LR 56.1B(1), NDGa ("The court will not consider any fact: (a) not supported by a citation to evidence . . . or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts.").

Plaintiff did not file a response to Defendant's Statements of Material Facts

[111-1]. While Plaintiff filed a "Brief in Opposition to Defendant's Motion for Summary Judgment" [114], and numerous exhibits [115-134], those filings do not comply with Local Rule 56.1, in substantial part because Plaintiff did not include a proper response to Defendant's Statement of Material Facts. *See* LR 56.1B(2)(a)(1), NDGa (mandating a response that contains "individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts"). Among other failings, Plaintiff did not indicate what material facts he disputes, and he did not properly cite to specific admissible evidence within the voluminous record submitted to the Court that supports any particular dispute. Plaintiff's exhibits total approximately 900 pages, including some entire depositions, without any pleading that cites specifically to the pertinent evidence within.

The Eleventh Circuit states that a failure to comply with Local Rule 56.1 is not a "mere technicality" because "[t]he rule is designed to help the court identify and organize the issues in the case." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (*citing Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir.2008)). Local Rule 56.1 protects "judicial resources by 'mak[ing] the parties organize the evidence rather than leaving the burden upon the district judge.'" *Reese*, 527 F.3d at 1268 (internal

quotes and citation omitted); *see also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or defense."). Thus, it is each party's obligation to cite evidence in the record that establishes a triable issue of fact, in the form of pleadings that comply with Local Rule 56.1. The Court, in other words, cannot and will not cull through an entire record to search for evidence that creates a disputed issue of fact. *See United States v. Adkinson*, 135 F.3d 1363, 1378-1380 (11th Cir. 1998); *Johnson v. City of Ft. Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997); *see also Dickson v. Amoco Performance Prod., Inc.*, 845 F.Supp. 1565, 1570 (N.D. Ga. 1994) ("It should be the party's responsibility to direct the court's attention separately to each portion of the record which supports each of the party's distinct arguments."). Accordingly, Local Rule 56.1B provides that Defendant's material facts [111-1] generally be deemed admitted. *See* LR 56.1(B)(2)(a)(2), NDGa.

The Court nevertheless has discretion to excuse or partially excuse Plaintiff's noncompliance with Local Rule 56.1, as justice requires. *See Fils v. City of Aventura*, 647 F.3d 1272, 1282-1283 (11th Cir. 2011) (explaining that, in considering motion for summary judgment, while the district court is not required to consider evidence

submitted in violation of local rules, it has broad discretion to do so if it deems it appropriate); *Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir. 2008) (same); *Ybarra v. John Bean Tech. Corp.*, 853 F.Supp.2d 997, 1002 (E.D. Ca. 2012) (stating that "[a] court has the discretion . . . to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with sufficient references.").

Although a litigant's *pro se* status does not necessarily entitle him or her to such relief, the Court notes that Plaintiff is not proceeding *pro se*. That Plaintiff is represented by counsel weighs against any leniency with regard to the Local Rule 56.1 violations.

On the other hand, Plaintiff's brief [114] opposing Defendant's Motion for Summary Judgment–while not in compliance with Local Rule 56.1– points to a few key items of evidence that the Court was able to discern in the record without much difficulty. Specifically, Plaintiff's brief makes clear that he is relying heavily on affidavits from former Wild Wings employees James Bussey [120-1] and Dylan Ftacek [121-1]. The Court was able to readily locate those documents on the docket, and those affidavits are sufficiently short that the Court was able to review and

consider the pertinent statements without specific citation from Plaintiff. Thus, the undersigned has exercised discretion to consider those two key affidavits submitted by Plaintiff in determining what facts are disputed. But the Court otherwise declines to consider the hundreds of pages of other exhibits Plaintiff submits in violation of Local Rule 56.1. And the Court likewise ignores any assertions of fact made by Plaintiff in his brief without specific citation to evidence in the record.

In sum, the Court has reviewed all legal arguments, all evidence submitted and cited by the Defendant, which has complied with L.R. 56.1, and the above-mentioned exhibits submitted by Plaintiff despite his violation of L.R. 56.1. The Court views all factual inferences from this evidence in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

Thus, based on this evidence, the following facts are either undisputed or are otherwise viewed in the light most favorable to Plaintiff:

Gregory Dockery ("Dockery") was a General Manager for Defendant while Plaintiff was employed by Defendant. SOMF [111-1] at ¶ 4. Dockery believed Plaintiff was African American when he decided to hire Plaintiff. *Id.* at ¶ 5.

Plaintiff worked as a dishwasher and "prep cook" during his employment with Defendant. *Id.* at ¶ 17. James Bussey was Plaintiff's primary supervisor. Bussey Aff. [120-1] at 5. According to Bussey, Plaintiff was diligent, punctual, and exhibited "good work ethics." *Id.*

Dockery had a different opinion of Plaintiff's performance. According to Defendant's undisputed facts, Plaintiff regularly complained about his job. *Id.* at ¶ 25. Dockery stated that he observed Plaintiff complaining about "petty stuff" to a level beyond other employees. Dockery Dep. [111-8] at 6. Plaintiff made excuses to Dockery on several occasions to avoid working particular shifts as requested. Dockery Dep. [111-8] at 11.

Bussey also reported to Dockery that Plaintiff on several occasions requested time off of work and/or changes to the kitchen schedule to fit his needs. Dockery Dep. [111-8] at 7-8; SOMF [111-1] at ¶ 7. Dockery interpreted these and other comments from Bussey as complaints about Plaintiff. Dockery Dep. [111-8] at 6-8. Dockery also received what he interpreted as complaints about Plaintiff's work performance from other managers, in addition to Bussey. *Id.* Prior to his termination, Plaintiff was written up for disciplinary infractions such as tardiness and poor attitude and signed the disciplinary write ups that were issued to him. SOMF [111-1] at ¶¶

29-30. Plaintiff also received verbal warnings for disciplinary infractions such as tardiness and poor attitude. *Id.* at ¶ 31.

According to Dockery and the documents produced by Defendant, Plaintiff was scheduled to work on May 27, 2010 beginning at 9:30 a.m. *Id.* at ¶ 40. Plaintiff did not arrive that day until 5:00 p.m. *Id.* at ¶ 43. Plaintiff did not call anyone at Defendant prior to arriving to alert Defendant that he would be late. *Id.* at ¶ 44.

Bussey originally prepared the kitchen schedule for Thursday, May 27, 2010. Bussey Aff. [120-1] at 4. As it was originally prepared, the schedule did not call for Plaintiff to work until 5 p.m. that day. *Id.* Bussey has no personal knowledge of whether that schedule was modified afterward he prepared it. *Id.*[2] Plaintiff testified that the schedule that he had seen the day before required him to report at 5 p.m., which he did. Goode Dep. [111-2] at 18. However, Plaintiff agrees that the schedule actually posted on May 27 stated for him to arrive at 9:30 a.m. Goode Dep. [111-2] at 19. Plaintiff, however, states "it didn't say that yesterday." *Id.*

A "no-call/no-show" violation occurs when an employee of Defendant fails to appear for his work shift and fails to inform any other of Defendant's employees of

---

[2] As for the possibility of a subsequent modification, Bussey states "[s]o far, no one has admitted to doing that." Bussey Aff. [120-1] at 4. The Court disregards this comment as hearsay. It is clear that Bussey lacks personal knowledge to testify that no one modified the schedule after he prepared it.

the reason for the absence. SOMF [111-1] at ¶ 45. A no-call/no-show infraction is a terminable offense. *Id.* at ¶ 47. Defendant has a strict policy in place requiring automatic termination for employees who commit a no-show/no-call offense, but Defendant's management has reasonable discretion to determine whether an exception to the policy should be granted on a case-by-case basis. *Id.* at ¶ 48. Management will consider, *inter alia*, the length of time an employee had worked for Defendant, the employee's prior disciplinary history, attitude, work ethic and the specific circumstances which lead to the infraction. *Id.* at ¶ 49. Defendant's Personnel Manual reflects these policies. *Id.* at ¶¶ 50-52. Disciplinary measures are exercised over Defendant's employees in a non-discriminatory fashion. *Id.* at ¶ 67.

Plaintiff was terminated because Dockery, the General Manager, believed he committed a no-call/no-show violation. *Id.* at ¶ 58. Also, other factors such as Plaintiff's short tenure as an employee and Plaintiff's disciplinary history, poor attitude and poor work ethic contributed to the decision to terminate. *Id.* Dockery attests that Plaintiff's race was not a factor in his decision to terminate Plaintiff's employment with Defendant. *Id.* at ¶ 62.

Bussey identifies three white employees who were guilty of no-call/no-show violations, but who were not terminated for the first offense: Jen Gerster, bar manager A.J. Sisca, and Dylan Ftacek. Bussey Aff. [120-1] at 3-4.

Plaintiff does not properly cite any evidence as to Gerster's or Sisca's responsibilities or the circumstances of their violations. But Plaintiff has submitted an affidavit from Ftacek [121-1], which, as noted above, the Court has reviewed and considered. According to Ftacek, he was a "back of the house" kitchen employee, like Plaintiff.[3] He performed "many of the same tasks" as Plaintiff. Ftacek Aff. [121-1] at ¶ 2. Ftacek confirms that he committed a no show/no call violation in April 2010, was not terminated, and instead was given extra duties to perform. *Id.* at ¶ 5.

The kitchen staff at Wild Wings was primarily non-Caucasian. During Plaintiff's employ, the kitchen staff was comprised of eleven Latino workers, four African-American workers, and only two Caucasian workers. SOMF [111-1] at ¶ 74. The kitchen worker hired in closest proximity after Plaintiff's termination is African-American. *Id.* at ¶ 69. Shortly after that hire, two more African-American kitchen workers were hired. *Id.* at ¶ 70.

---

[3] There is a distinction between "back of the house" staff, which includes more non-skilled kitchen staff such as Plaintiff, and "front of the house" staff, which include more managers, semi-skilled positions such as bartenders, and staff who interact with customers.

Defendant lists as "examples" 15 former Caucasian workers, two Latino workers and three former African-American workers who have been terminated as a result of no call/no show infractions. *Id.* at ¶ 66.

### 2. PLAINTIFF'S TITLE VII CLAIM

Plaintiff alleges that his termination resulted from race-based discrimination in violation of Title VII of the Civil Rights Act of 1964. Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII claim, a plaintiff must prove that the defendant acted with discriminatory intent. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 980-981 (11th Cir. 1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir. 1983). Such discriminatory intent may be established either by direct evidence or by circumstantial evidence meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184 (11th Cir. 1984).

Direct evidence is defined as evidence "that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." BLACK'S LAW DICTIONARY 596 (8th ed. 2004); *see also Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1993); *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). Only the most blatant remarks whose intent could only be to discriminate constitute direct evidence. *Clark*, 990 F.2d at 1226; *Carter*, 870 F.2d at 581. Evidence that only suggests discrimination, *see Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990), or that is subject to more than one interpretation, *see Harris v. Shelby Cnty. Bd. of Educ.*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996), does not constitute direct evidence. "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998).

Evidence that merely "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" is, by definition, circumstantial. *Earley*, 907 F.2d at 1081-82. Because direct evidence of discrimination is seldom available, Title

VII plaintiffs must typically rely on circumstantial evidence to prove discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997). Under this framework, a plaintiff is first required to create an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310, *reh'g denied and opinion superseded in part*, 151 F.3d 1321 (11th Cir. 1998); *Combs*, 106 F.3d at 1527.

Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *See Jones*, 137 F.3d at 1310-1311; *Holifield*, 115 F.3d at 1562; *Burdine*, 450 U.S. at 253-54. Once the plaintiff establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Jones*, 137 F.3d at 1310. If the defendant is able to carry this burden and explain its rationale, the plaintiff, in order to prevail, must then show

that the proffered reason is merely a pretext for discrimination. *See Burdine*, 450 U.S. at 253-54; *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

A *prima facie* case along with sufficient evidence to reject the employer's explanation is generally all that is needed to permit a finding of intentional discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Combs*, 106 F.3d at 1529. However, summary judgment for the employer may still be appropriate in some circumstances, even if plaintiff produced evidence refuting the employer's proffered explanation, if the record "conclusively revealed some other, nondiscriminatory reason" motivated the decision. *Alvarez v. Royal Atlantic, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citing *Reeves*, 530 U.S. at 148).

This *McDonnell Douglas-Burdine* proof structure "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *see also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987). The Eleventh Circuit has held that this framework of shifting burdens of proof is a valuable tool for analyzing evidence in cases involving alleged disparate

treatment, but the "framework is only a tool." *Nix*, 738 F.2d at 1184. The "ultimate

question" is not whether a plaintiff has established a *prima facie* case or demonstrated

pretext, but "whether the defendant intentionally discriminated against the plaintiff."

*Id.* (quoting *Aikens*, 460 U.S. at 713-14); *see also Jones*, 137 F.3d at 1313. The

plaintiff retains the ultimate burden of proving that the defendant is guilty of

intentional discrimination. *Burdine*, 450 U.S. at 253.

a.     *Prima Facie* Case

In this case, Plaintiff attempts to offer circumstantial proof of discriminatory

intent. Although the *McDonnell Douglas* framework is not the exclusive means for

doing so, Plaintiff here appears to rely on *McDonnell Douglas*. Thus, the undersigned

analyzes the material facts listed above pursuant to *McDonnell Douglas*.

Under this framework, a plaintiff can generally establish a *prima facie* case of

unlawful discrimination under Title VII by showing that: 1) he is a member of a

protected class; 2) he was subjected to an adverse employment action by his employer;

3) he was qualified to do the job in question, and 4) his employer treated similarly

situated employees outside his protected classification (*i.e.*, those of a different sex or

race) more favorably than it treated him. *See McDonnell Douglas*, 411 U.S. at 802;

*see also Wright v. Southland Corp.*, 187 F.3d 1287, 1290 (11th Cir. 1999); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff satisfies his obligation to point to admissible evidence supporting the first three elements of a *prima facie* case. First, Plaintiff is a member of a protected class because he is African American. *See* SOMF [111-1] at ¶ 11. Second, Plaintiff suffered an adverse employment action in the form of termination. *See id.* at ¶ 58. Third, while Defendant's Statement of Material Facts [111-1] states that Plaintiff was not qualified for his job, *see id.* at ¶¶ 60-61, the Court views this as a matter in dispute. Bussey, Plaintiff's primary supervisor, attests that Plaintiff was a "diligent" and "punctual" worker with "good work ethics." Bussey Aff. [120-1] at 5. Moreover, Defendant hired Plaintiff in the first place apparently knowing his qualifications, which supports the inference that Plaintiff was at least minimally qualified.

Plaintiff's difficulty is with establishing the fourth element, i.e., disparate treatment or some other evidence of discriminatory intent. Notably, Plaintiff was not terminated in favor of a non-African American hire. According to undisputed evidence submitted by Defendant, the kitchen worker hired in closest proximity after Plaintiff's termination was also African-American, as were two others who were hired

shortly thereafter. SOMF [111-1] at ¶¶ 69-70. Plaintiff's attempts to otherwise show discriminatory intent fail, as discussed below.

i.        Disparate Treatment

"When evaluating an allegation of disparate treatment," courts "require that a comparator be similarly-situated to the plaintiff in all relevant respects." *Stone & Webster Constr. V. U.S. Dept. of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012) (internal quotations and citation omitted). Indeed, the comparator employee "must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004).

"Even if a plaintiff and comparator are similar in some respects, differences in their overall record may render them not 'similarly situated' for purposes of establishing a prima facie case." *Brown v. Jacobs Eng'g, Inc.*, 401 Fed.Appx. 478, 480 (11th Cir. 2010). For example, in *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316-1317 (11th Cir. 2003), the Eleventh Circuit affirmed a grant of summary judgment despite evidence that the African-American plaintiff was disciplined more harshly than a Caucasian co-worker who performed the same job, and who committed similar infractions. The court found that plaintiff failed to establish that the two

employees were similar situated in all relevant respects because, despite similarity in their misconduct, the comparator's overall record was better. *See id.*

"The quantity and quality of the comparator's misconduct must be nearly identical." *Brown*, 401 Fed.Appx. at 480 (internal quotations and citation omitted). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (internal quotations and citation omitted).

Thus, courts typically examine proffered comparators in detail to ensure that any comparison is not "confusing apples with oranges." *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). *See, e.g., McCallister v. Hillsborough Cnty. Sheriff*, 211 Fed.Appx. 883, 885-886 (11th Cir. 2006) (finding that individuals whom Plaintiff identified were not similarly-situated because Plaintiff broke six rules while individuals in question broke between one and three rules); *Greer v. Birmingham Beverage Co., Inc.*, 291 Fed.Appx. 943, 946 (11th Cir. 2008) (finding that Plaintiff failed to identify similarly-situated individuals; coworkers Plaintiff identified were disciplined once for excessive cell phone usage, while Plaintiff was disciplined twice); *Roy v. Broward Sheriff's Office*, 160 Fed.Appx. 873, 876 (11th Cir. 2005) (finding plaintiff, a terminated deputy sheriff, did not identify

any similarly-situated individuals; closest potential comparator was not in uniform and riding in a private vehicle at time of incident in question, while plaintiff was in uniform and driving a police car at time of incident leading to termination). Courts consider whether the proffered comparator had the same supervisor, *see Morris v. Potter*, 251 Fed.Appx. 667, 668-669 (11th Cir. 2007), as well as the type of position the plaintiff holds and the content of the plaintiff's work. *See Simionescu v. Bd. of Tr. of the Univ. of Alabama*, 482 Fed.Appx. 428, 430-431 (11th Cir. 2012) (finding that two university faculty members were not similarly situated because one was not tenure-track, while plaintiff was, and second faculty member taught in a different department than did plaintiff). Finally, courts also consider whether the plaintiff and the proffered comparator were employed for similar periods and whether they had similar records of performance. *See Roy*, 160 Fed.Appx. at 876 (finding that proffered comparator was not similarly situated because comparator had been with department for sixteen years, while plaintiff had less than 18 months' service); *Jarvis v. Siemens Med. Solutions USA, Inc.*, 460 Fed.Appx. 851, 857-858 (11th Cir. 2012) (finding that minority plaintiff failed to show that Caucasian coworker qualified as similarly situated where record showed plaintiff had several significant employment performance deficiencies not seen in Caucasian employee's record).

Plaintiff's evidence of disparate treatment does not meet these standards. Plaintiff points to the Bussey [120-1] and Ftacek [121-1] affidavits. But the facts submitted in these affidavits are insufficient to establish that a non-protected class employee in circumstances "nearly identical to the plaintiff" was treated more leniently.

First, Bussey does not establish a genuine issue of material fact with his conclusory assertion that:

> Defendant's Wings of Alpharetta's managers discriminated based on race in who they subjected to punishment and how quickly, how harshly and how frequently. The managers were not consistent in applying disciplinary rules. Some Managers were quick to mete out harsh discipline to African Americans while over looking or lightly disciplining Whites who committed the same infractions.

Bussey Aff. [120-1] at ¶ 3.

Without more detail, this sort of conclusory assertion of personal belief of disparate treatment is insufficient. *See Givhan v. Electronic Engineers, Inc.*, 4 F.Supp.2d 1331, 1341 (M.D. Ala. 1998) (stating that conclusory statements in an affidavit that Plaintiff was treated differently than non-minority employees in terms of training opportunities and bonus pay, without evidence of specific examples that would permit the Court to compare circumstances, were insufficient to survive summary judgment). Defendant has established that discipline might be meted out

differently for different employees based on factors such as the employee's position, performance, and length of employ. SOMF [111-1] at ¶¶ 48-52. Without more information, Bussey's mere conclusory assertion does not allow the Court to find a genuine issue of material fact that these unnamed "Whites," who were more lightly disciplined by "Some" unnamed "Managers," were similarly-situated to Plaintiff.

Bussey offers three specific examples of Caucasian workers who were not fired for a first no show/no call offense: Jen Gerster, A.J. Sisca, and Dylan Ftacek. Bussey Aff. [120-1] at ¶ 4. The Court has reviewed Bussey's statements in combination with Ftacek's affidavit [121-1] and finds that this evidence also does not establish circumstances similarly situated to Plaintiff's.

As to Gerster and Sisca, Bussey does not establish, and Plaintiff does not otherwise properly cite to any evidence showing, that these individuals were employed in positions similar to Plaintiff's. To the contrary, Bussey states that Sisca was a "manager" at the time of his offense. Bussey Aff. [120-1] at ¶ 4. On the one hand, one might treat a manager's rules violations more harshly to set an example. On the other hand, there may be reason to hesitate much more before firing a manager who may be more critical to the operation of the business than a dishwasher/prep cook. Either way, the difference in position makes the comparison inapt.

Ftacek is a closer call, because Ftacek attests that was a fellow "back of the house" kitchen worker, performing many of the same tasks as Plaintiff. Ftacek Aff. [121-1] at ¶ 2. But there is no evidence as to Ftacek or any of the other comparators to allow the Court to otherwise compare them with the Defendant vis-a-vis performance record, prior disciplinary history, longevity of employment, the circumstances of the infraction or other factors that, according to Defendant's undisputed evidence, are relevant to deciding whether to terminate on the basis of a no show/no call. Plaintiff bears the burden of producing evidence that would enable a factfinder to determine that these employees and the circumstances of their infractions provide an "apples-to-apples" comparison to him and his situation. At best, he establishes that one employee, Ftacek, is similar in some respects (job function), but Plaintiff's evidence otherwise leaves the factfinder to guess whether any of the other relevant circumstances are similar. That does not satisfy Plaintiff's burden to produce evidence showing a genuine issue of material fact.

Finally, neither Bussey's affidavit nor any other evidence that Plaintiff properly cites in the record establishes that Dockery, the manager who apparently fired Plaintiff,[4] was involved in the decisions not to terminate Ftacek, Gerster or Sisca.

---

[4] *See* Cisca Dep. [111-6] at 1 (stating that it was "Doc," the "general manager," who made the decision to fire Plaintiff).

"Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989); *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 n.7 (11th Cir. 1998) ("Different supervisors may have different management styles that—while not determinative—could account for the disparate disciplinary treatment that employees experience.") (*superceded in part on other grounds*, *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321 (11th Cir. 1998)). Indeed, Dockery's deposition states that he was not the manager on duty when Ftacek was spared termination, that he "can't say exactly why we didn't [terminate Ftacek]," and if anything Dockery appeared to disagree with the decision that had been made by the other manager. *See* Dockery Dep. [111-7] at 20 ("And I was just like, well, it's not consistent with policy, how are we going to make it fair?"). Dockery also suggests that another manager was the decision-maker with regard to Gerster. *See* Dockery Dep. [111-8] at 1 ("Well, until these papers started coming across my desk, I didn't know about Jennifer Gerster and I had to go back and get a story."); [111-7] at 20 (describing what he subsequently learned about Gerster, i.e., that she came in late, did not entirely fail to show up, and "the manager at that time was like, well, I came in to work on catering stuff. I can go back behind the bar now. And it was a slow night,

so they said, just go ahead and take the night off and work on your catering stuff.")

The evidence fails to show similarity for this reason as well.[5]

ii.     Other Evidence of Discriminatory Intent

Bussey's Affidavit also refers to certain "racially charged remarks" by various Wild Wings managers, including Dockery. Bussey Aff. [120-1] at 2. According to Bussey:

_____

[5] In an effort to disprove disparate treatment, Defendant points to "examples" of 15 Caucasian employees who have been fired for "no call/no show" violations. SOMF [111-1] at ¶ 66. The Court finds this fact to be of limited value and does not rely on it in recommending denial of summary judgment. Just like Plaintiff, Defendant does not establish any facts necessary to compare the similarity of these infractions with Plaintiff's. For example, there is no indication that these individuals were terminated after only a first offense, as Plaintiff contends he was. There is also no indication of when these terminations occurred, or whether they involved the same decision makers. Moreover, Defendant does not state that this list is exhaustive of all employees who have been terminated for this reason. That Defendant may offer 15 "examples" of Caucasian employees who have been terminated on these grounds may be of little import if, for example, many more than 15 African-American employees were terminated on the same ground, or if a disproportionate percentage of African-American employees were terminated on this ground. The Defendant's list of non-exclusive "examples" does not supply the Court with enough information.

Plaintiff principally argues that Defendant's reliance on this list is a discovery violation because Defendant never produced information in discovery about those employees. As explained further below, however, Plaintiff does not supply the Court with enough information to determine whether any discovery violation occurred. Regardless, the Court does not rely on this evidence in recommending summary judgment, for the reasons explained above.

Overt discrimination by Defendants managers was rare. However, during the term of my employment at Defendants location I have heard the following people make the following racially charged remarks:

(a) General Manager, Greg Dockery, (while criticizing an African American Male named Kane) said to him "that he could hire a 'trained monkey' to make sandwiches better than he (Kane) could."

(b) F.O.H. Manager, Kelly Lindbergh (while speaking of the Plaintiff Charles Goode) referred to him as an "Albino Black."

(c) Regional Manager, John Jones, (while speaking of Lupe and other Mexican American workers at the restaurant) referred to them as "Spics" on more than one occasion.

(d) Assistant kitchen manager James De la Hunt frequently made ethnic jokes at the expense of a subordinate African-American waitress, many directed at the size of her bottom. Witness his brazen conduct in filming on the Defendants premises and posting racially charged video proclaiming her the 'First African American Troll Doll' even during the pendency of this trial and making a reference to 'crack'.

*Id.*

Racist remarks by decision-makers, in combination with other evidence, can constitute circumstantial evidence of discrimination. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291-92 (11th Cir.1998). In *Ross*, the Eleventh Circuit found sufficient evidence of discrimination, where one decision-maker made the comment "I never seen as many blacks in this building except in a Tarzan movie," and another made the comment, pointing to plaintiff, "You see that one over there, I am going to

get rid of him," in combination with other strong evidence of pretext, including that one of the decision-makers had been guilty of the same misconduct that was supposedly the reason for Plaintiff's termination. *Id.* However, Plaintiff cannot survive summary judgment based on ambiguous, isolated stray remarks alone, that are unrelated to the employment decision at issue. *See Ash v. Tyson Foods, Inc.*, 190 Fed.Appx. 924, 926 (11th Cir. 2006); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Because Beguiristain's alleged comment [that another employee, not the plaintiff, did not deserve her job because that employee was a woman] was (looking at the admissible evidence before the district court) an isolated comment, unrelated to the decision to fire [Plaintiff], it, alone, is insufficient to establish a material fact on pretext.")

The remarks cited by Bussey are insufficient to establish an inference that Plaintiff was terminated on account of race. First, Bussey does not establish, and Plaintiff does not otherwise properly cite any evidence showing, when these remarks were made in relation to the timing of Plaintiff's termination. Second, with the exception of Dockery, who according to the evidence in the record was the manager who fired Plaintiff, Plaintiff does not properly cite any evidence suggesting that the

other speakers were involved in the decision. Third, all but one of the comments were directed at others, and none of the comments directly related to employment decisions.

As for Dockery's comments, there is no question that an explicit or even implicit reference to an African-American employee as a "monkey" can be interpreted as a racially-based insult, depending on the circumstances. *See, e.g., Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (finding sufficient evidence of discriminatory intent in a hostile work environment claim, based on evidence that an African-American employee's co-workers repeatedly placed bananas or banana peels in his truck). However, this sole remark attributed to Dockery, without more, does not provide enough evidence to conclude that it reflected racial animus. The comment was not itself a reference to the employee as a monkey. And to criticize an employee for being less effective than a "trained monkey" is not a comment on the race of the employee being criticized. Even if it reflected some racial animus, this one stray remark about another employee at some unknown point in time does not provide sufficient circumstantial evidence that race was a factor in the termination of Plaintiff.

Moreover, while not dispositive, it is notable that most of Defendant's kitchen staff during the relevant time was non-Caucasian, and that the kitchen worker hired in closest proximity after Plaintiff's termination was African-American, along with

two others shortly thereafter. SOMF [111-1] at ¶¶ 68-70, 74. These facts constitute substantial evidence suggesting that Plaintiff was not terminated on account of his race. Plaintiff fails to rebut this evidence with admissible evidence of disparate treatment or other evidence of discriminatory intent. Thus, Plaintiff does not establish a *prima facie* case. Summary judgment should be granted.

> b.    Pretext

Assuming Plaintiff had established a *prima facie* case, summary judgment would still be warranted if the Defendant established that Plaintiff's termination was motivated by legitimate, non-discriminatory reasons. Here, Defendant states that the termination was not because of race, but because of Plaintiff's "no show/no call" infraction, in combination with Plaintiff's poor performance record, short tenure with the restaurant and other factors. SOMF [111-1] at ¶ 58-61.

However, Plaintiff can defeat this showing by pointing to evidence of pretext. A plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer or show indirectly that the employer's ultimate justification is not believable. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1522 (11th Cir. 1991). In other words, the plaintiff has the opportunity to come forward with

evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *See Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804. Because a plaintiff bears the burden of establishing that a defendant's reasons are a pretext for discrimination, a plaintiff "must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

None of this analysis is necessary here, however. Because Plaintiff fails to establish a *prima facie* case of discrimination, it is unnecessary to reach the issue of whether the legitimate non-discriminatory reasons that Defendant offers for Plaintiff's dismissal were pretextual. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181–82 (11th Cir.2010) (noting that pretext becomes a relevant issue only after the plaintiff has established a *prima facie* case).

Nevertheless, in the interests of completeness, and because it provides an alternative reason why summary judgment is appropriate, the Court will discuss the evidence of pretext.

As explained below, Plaintiff does not rebut Defendant's evidence of non-discriminatory reasons for his termination and therefore does not create a genuine issue of material fact as to pretext. First, the Court again considers Plaintiff's failure to comply with Local Rule 56.1. Because Plaintiff does not properly point to any evidence at all, by definition he does not refute–and instead admits–Defendant's legitimate, non-discriminatory reasons for the termination. Thus, summary judgment could issue on this ground alone.

Second, even if the Court were inclined to consider the Bussey affidavit, notwithstanding the Rule 56.1 violation, Plaintiff still does not establish pretext. In the end, the issue in this lawsuit is not whether Plaintiff actually committed a "no show/no call" violation, or whether any violation should have been excused because of a misunderstanding in or failure to communicate a late change to the schedule. The issue is whether Plaintiff was terminated because the general manager believed that he had committed a violation. Even a mistaken, unfairly arrived at belief that an employee committed a rules violation does not suggest discrimination. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n. 2 (11th Cir.1989) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the decision maker fired employee because of a belief that the employee had

done wrong). Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [federal discrimination laws do] not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988); *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (fact that complaining employees may have been "lying through their teeth" as to plaintiff's supposed violations is irrelevant; question is whether supervisors who terminated plaintiff believed him to be guilty of misconduct). *See also Nix*, 738 F.2d at 1187 (an employer may make an employment decision "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.")

Here, Dockery states that Plaintiff was terminated because of a "no call/ no show" violation, not because of race. Dockery Aff. [111-11] ¶¶ 41-44. Defendant produced the schedule in place on that day, and it called for Plaintiff to work at 9:30 a.m. on May 27. [111-10] at 2. In his deposition, Plaintiff acknowledged that when he arrived at 5 p.m. that evening, the schedule in place at that time stated that he was to

have arrived at 9:30 a.m. [111-2] at 19-20. There is no dispute that Plaintiff did not arrive until several hours later.

According to Bussey, the schedule must have been changed since he prepared it. Bussey Aff. [120-1] at 4. And according to Plaintiff, it had been changed from when he last reviewed it the day before. Goode Dep. [111-2] at 19-20. These statements create an issue of fact as to how and when the schedule was changed, whether Plaintiff knew about the change, and whether it was fair to fire Plaintiff for violating a recently-changed schedule he may not have previously seen. But Title VII is not about fairness in the workplace, nor does it authorize a mini-trial to determine exactly what happened from the day Bussey created the schedule until May 27. None of this refutes what Dockery states, that is, that Plaintiff was fired because Plaintiff failed to show up pursuant to the posted schedule, or at least a belief that he had so failed.

Nor does Plaintiff adduce any evidence that the decision-maker rigged this schedule so as to provide an excuse for firing Plaintiff on account of his race. Any speculation in this regard is refuted by the fact that (a) the majority of Defendant's kitchen staff was non-Caucasian and (b) the next kitchen worker hired after Plaintiff's termination was also African-American (along with two others shortly thereafter). In

light of the record as a whole, Plaintiff's speculation that he was targeted for his race is not "significantly probative evidence on the issue [of pretext] to avoid summary judgment." *Young*, 840 F.2d at 829.

That Bussey disputes that Plaintiff was a poor worker with a history of lateness also does not establish pretext. A disagreement among supervisors as to an employee's performance does not generally render a performance-based justification pretextual. *See, e.g., Johnson v. Williams*, 117 Fed.Appx. 769, 772 (D.C.Cir.2004). Here, Dockery based his assessment in part on statements from Bussey about the Plaintiff's frequent requests to change his schedule, which Dockery interpreted as complaints. *See* Dockery Dep. [111-8] at 6-8. Bussey does not dispute that Plaintiff made frequent scheduling change requests, that this was disruptive, and that Bussey reported these things to Dockery. That Dockery might have mis-interpreted these things as "complaints" from Bussey about Plaintiff's diligence or reliability is not evidence of pretext. Moreover, Dockery attests to his own observations of Plaintiff complaining about "petty stuff" more than other employees, and that Plaintiff made "excuses" to him "several" times to avoid working when he was asked to cover different shifts. Dockery Dep. [111-8] at 11. Dockery also received complaints about Plaintiff from other managers in addition to Bussey. *Id.* at 6-8. In the end, there may be a dispute as

to how good of a worker Plaintiff was. But this does not establish that Defendant's reasons for firing him on May 27 were pretextual.

Thus, undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [111] be **GRANTED** as to Plaintiff's Title VII claim.

### C.  PLAINTIFF'S SECTION 1981 CLAIM

Plaintiff's remaining claim is for violation of 42 U.S.C. § 1981 ("Section 1981"). The Supreme Court has held that Section 1981 encompasses claims of race discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008); *see also Bryant v. Jones*, 575 F.3d 1281, 1301 (11th Cir. 2009). Furthermore, in cases in which a Plaintiff has asserted a claim under Section 1981 as a remedy for employment discrimination, the elements required to establish a claim under Section 1981 mirror those required for a Title VII claim. *See Howard v. B.P. Oil Co.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994) (*citing Patterson v. McClean Credit Union*, 491 U.S. 164 (1989)); *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991). Therefore, for the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [111] be **GRANTED** as to Plaintiff's Section 1981 claim.

### D.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has filed his own Motion for Summary Judgment [135].[6] That Motion fails on several levels.

First, Plaintiff's Motion [135] is untimely. Discovery in this case closed June 15, 2012. *See* Scheduling Order [90] and Order [101]. Thus, all motions for summary judgment were due no later than July 18, 2012. *See* LR 56.1D, NDGa and Fed. R. Civ. P. 6(d). Plaintiff filed his Motion [135] on August 17, 2012. A District Court need not consider an untimely motion for summary judgment. *See Dedge v. Kendrick*, 849 F.2d 1398, 1398 (11th Cir. 1988).

Plaintiff explains his tardiness based on alleged discovery violations by Defendant. *See* Pl. Brf. [135-1] at 3. Upon discovery of the alleged violations, Plaintiff could have asked for a teleconference with the Court to discuss the issue per the terms of the Scheduling Order [90] governing this case. *See* Scheduling Order [90] at 2. Alternatively, Plaintiff could have filed a motion to compel under Local Rule 37.1 and Fed. R. Civ. P. 37. *See* LR 37.1, NDGa; Fed. R. Civ. P. 37(a), (c).

---

[6] Plaintiff styles his Motion [135] as a Motion for Summary Judgment. *See* Motion [135] at 1. Plaintiff, however, writes that he is seeking leave of the Court to file a Motion for Summary Judgment. *See id* and Pl. Brf. [135-1] at 3. The undersigned treats this filing as a motion for summary judgment.

Plaintiff, moreover, has not put forth sufficient evidence to suggest that Defendant violated applicable discovery rules. Plaintiff, for instance, did not include his document requests or Defendant's responses thereto, the comparison of which would allow the undersigned to make a reasoned judgment in this regard, nor has Plaintiff cited relevant authority supporting Plaintiff's argument. *See* LR 37.1A, NDGa. Just as with Plaintiff's response to Defendant's Motion for Summary Judgment, mere unsupported legal arguments or assertions in briefs alone are not enough. The undersigned is thus unable to make any judgment as to the propriety of Plaintiff's discovery responses based on Plaintiff's Brief [135-1] .

Second, Plaintiff's Motion for Summary Judgment [135] fails to comply with Local Rule 56.1 because it does not include a Statement of Material Facts. *See* LR 56.1, NDGa. Plaintiff filed 24 evidentiary exhibits with his Motion [135] totaling 79 pages. *See* Docket Nos. 136-144. Plaintiff's Brief [135-1] cites vaguely to these exhibits through footnotes, but does not point the Court to specific sections of the exhibits in question. As discussed above, these omissions are not technical faults but, rather, procedurally-fatal violations of the Local Rules.

Each of these shortfalls provides an independent basis upon which to deny Plaintiff's Motion for Summary Judgment [135]. Moreover, Defendant filed a Motion

to Strike Plaintiff's Motion for Summary Judgment. *See* Motion [146]. Defendant argues that the Court should strike Plaintiff's Motion for Summary Judgment [135] as both untimely and for failure to comply with Local Rule 56.1 *See* Def. Brf. [146-1]. Plaintiff never filed a response to Defendant's Motion to Strike [146], indicating that Plaintiff does not oppose Defendant's Motion [146]. *See* LR 7.1B, NDGa. Plaintiff's approach thus suggests a lack of support for his Motion for Summary Judgment [135]. The undersigned therefore **RECOMMENDS** that Defendant's Motion to Strike [146] be **GRANTED** or, in the alternative, that Plaintiff's Motion for Summary Judgment [135] be **DENIED**.

## E.    PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT

Plaintiff has also filed a motion under Fed. R. Civ. P. 37 for sanctions against Defendant. *See* Motion to Strike [153]. Plaintiff argues that the Court should, *inter alia,* strike the affidavit of Gregory Dockery because that affidavit is based on perjury and other malfeasance, such as fabricated evidence. *See* Pl. Brf. [153-1] at 2-3; 11-14. Plaintiff, however, mainly complains of the same alleged discovery violations by Defendant discussed above. *See id.* at 5-8; 15-16.

To begin, Plaintiff's Motion [153] is poorly written and otherwise difficult to comprehend. Plaintiff, for instance, refers to "Defendants [sic] motion for Default."

43

Pl. Brf. [153-1] at 3. The undersigned is, however, unaware of any such motion pending in this action. Plaintiff also requests that the Court preclude "Defendants [sic] . . . from usage [sic] of Plaintiff's time report in the instant case," but it is unclear from Plaintiff's Brief [153-1] why such relief is appropriate. Pl. Brf. [153-1] at 17.

Plaintiff's Motion [153] fails on several levels. Most basically, Plaintiff should have obtained an appropriate Court order before filing this Motion [153].

Plaintiff seeks relief under Fed. R. Civ. P. 37. *See* Pl. Brf. [153-1] at 2. The Eleventh Circuit has stated that a party may not obtain sanctions under Rule 37 before first securing a discovery order. *See U.S. v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997); *see also* 7 *Moore's Federal Practice*, § 37.42[1] (Matthew Bender 3d Ed.) (explaining that "Two things are required as conditions precedent before the gears of the sanction machinery of Rule 37(b) may be engaged: (1) a court order or direction must be in effect, and (2) that order or direction must be violated. The absence of a prior order or direction compelling discovery precludes Rule 37(b) sanctions."). Plaintiff, however, neither sought nor obtained such an order through, for example, a motion to compel.

Moreover, Plaintiff seeks drastic relief, including the striking of Dockery's affidavit and entry of a default judgment against Defendant. *See* Pl. Brf. [153-1] at 26.

Entry of default judgment "ought to be a last resort-ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders," *Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d at 1317 (internal quotations and citation omitted), or when less drastic sanctions will not ensure a party's compliance with court orders. *See Wouters v. Martin Cnty., Fla.*, 9 F.3d 924, 934 (11th Cir. 1993); *see also 7 Moore's Federal Practice*, §§ 37.50[2][a] (Matthew Bender 3d Ed.) (same). Indeed, courts strongly disfavor default judgments, preferring instead to adjudicate cases on the merits. *See Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). Courts are similarly hesitant to strike a party's pleading. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) (stating that "When reviewing an order striking a defendant's pleadings, our review should be particularly scrupulous lest the district court too lightly resort to this extreme sanction. . .") (internal quotations and citation omitted).

As noted, however, Plaintiff fails to provide the court with a sufficient basis upon which to grant the relief he requests, particularly in light of these high standards. Plaintiff, moreover, has not proven that lesser sanctions would suffice, assuming *arguendo* that the Court found Defendant violated applicable discovery rules.

Plaintiff's argument that Dockery's statements are improperly based on hearsay is frivolous. *See* Pl. Brf. [153-1] at 17-19. First, Plaintiff cites Georgia law to argue that the Court must strike the Affidavit on that basis. *See id.* at 19. As Plaintiff is moving under federal law, including Fed. R. Civ. P. 37, Title VII and Section 1981, Georgia law does not control. Second, the Court has reviewed the testimony about which Plaintiff complains and it is clearly not hearsay. Plaintiff complains about Dockery's statement that Plaintiff "used foul language while working." [153-1] at 18. Plaintiff's suggesting that Dockery's description of Plaintiff's inappropriate language as part of his explanation for why Plaintiff was fired is "hearsay" under the Federal Rules of Evidence is nothing short of frivolous. Plaintiff also complains about Dockery's testimony about his opinion of Plaintiff's performance record, which was based on statements by other managers. Again, these statements do not appear to be offered for the truth of the matter asserted but rather to prove Defendant's reasons for termination. This is obviously not hearsay and Plaintiff's statement otherwise betrays a lack of understanding of what constitutes hearsay under the Federal Rules of Evidence, Fed. R. Evid. 801, *et seq.*

Plaintiff also cites 18 U.S.C. § 401 in support of this Motion [153]. That law allows courts "to punish by fine or imprisonment" parties found in contempt,

including people who, in the court's presence, misbehave so as to "obstruct the administration of justice," as well as any "[d]isobedience or resistance to its lawful writ, process, order, rule, decree or command." 18 U.S.C. § 401.

Plaintiff appears to seek sanctions for contempt on the part of Gregory Dockery because of the allegedly false content of Dockery's Affidavit [111-11]. "A court may impose a civil contempt sanction only if the record establishes by clear and convincing evidence that: (1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimus . . . and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order." 7 *Moore's Federal Practice* § 37.51[7][b] (Matthew Bender 3d Ed.). In contrast, the elements of criminal contempt are: "(1) a lawful and reasonably specific order that (2) the defendant has violated (3) wilfully." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1242 (11th Cir. 2007).

Plaintiff fails these standards here. Plaintiff has not identified a court order, the violation of which is required to support a finding of contempt. Nor has Plaintiff established any misconduct.

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion [153] be **DENIED**.

47

### F. PLAINTIFF'S MOTION FOR DISCOVERY ORDER

Plaintiff on September 27, 2012 filed a "Motion for Court Order to Obtain Department of Labor Records." *See* Motion [158]. Plaintiff seeks the employment dates, termination dates, basis for termination and racial identity of the 22 individuals whom Defendant has listed as former employees who have been terminated for "no show/no call" violations. *See* Pl. Brf. [158-1] at 1-3. Plaintiff filed this Motion [158] approximately three and one-half months after discovery closed. *See* Scheduling Order [90] and Order [101]. Plaintiff argues that he "had no opportunity to request an extension of discovery or [to] register a discovery dispute." Pl. Brf. [158-1] at 4. As explained above, however, Plaintiff could have moved under LR 37.1 and Fed. R. Civ. P. 37 upon receipt of Defendant's Motion for Summary Judgment [111] to compel Defendant to produce additional documents, or perhaps ask the Court for additional time to obtain this information. Plaintiff, however, failed to do so. Plaintiff's Motion [158] fails on this basis. Moreover, the undersigned has recommended that Defendant's Motion for Summary Judgment [111] be granted. That recommendation renders Plaintiff's Motion [158] moot. The undersigned therefore **RECOMMENDS** that Plaintiff's Motion for Order [158] be **DENIED.**

## III. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [111] be **GRANTED**. The undersigned further **RECOMMENDS** that Plaintiff's Motion to Strike the Affidavit of Gregory Dockery [153]; and Plaintiff's Motion for Order [158] be **DENIED**. Finally, the undersigned recommends that Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment [146] be **GRANTED** or in the alternative that Plaintiff's Motion for Summary Judgment[135] be **DENIED** on the merits.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 18th day of January, 2013.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE